GRABER, Circuit Judge,
concurring:
Our recent opinion in Rice v. Holder, 597 F.3d 952 (9th Cir.2010), answered the legal questions raised in this case, and no factual distinction exists. Therefore, I am compelled to concur in the per curiam opinion. See generally Miller v. Gammie, 335 F.3d 889 (9th Cir.2003) (en banc).
I write separately, however, to express my disagreement with our underlying rule that equal protection principles require Congress to treat aliens subject to a state expungement identically to aliens subject to a federal expungement. Though the genesis of that conclusion is understandable, its continued application is unjustified. Like others, I think that we should revisit our current rule. See Rice, 597 F.3d at 957-58 (Ikuta, J., concurring) (arguing that we should revisit this rule); Ramirez-Altamirano v. Holder, 563 F.3d 800, 816-17 (9th Cir.2009) (Ikuta, J., dissenting) (same); see also Dillingham v. INS, 267 F.3d 996, 1012-13 (9th Cir.2001) (Fernandez, J., dissenting) (suggesting that the rule is incorrect but concluding that, “for purposes of this case, that is neither here nor there”).
In the years following the 1970 enactment of the Federal First Offender Act (“FFOA”), the BIA held that an expunged state conviction for simple possession of drugs was not a “conviction” for purposes of the immigration laws, provided that the state expungement statute was a “state counterpart” to the FFOA. In re Deris, 20 I. & N. Dec. 5, 11 (B.I.A. 1989); In re Werk, 16 I. & N. Dec. 234, 235 (B.I.A.1977). In many states, the state expungement statute qualified as a “state counterpart” to the FFOA, and an alien’s expunged conviction generally had no bearing on his or her rights under the immigration laws. In other states, however, the state expungement statute was not a “state counterpart” to the FFOA because it permitted expungement of crimes of greater seriousness than simple possession. In re Deris, 20 I. & N. Dec. *1106 at 11. In those states, all expungements were invalid for purposes of the immigration laws, even if the alien in question had been convicted only of simple possession. Id.
In Garberding v. INS, 30 F.3d 1187, 1190 (9th Cir.1994), we held that the BIA’s rule violated equal protection principles as applied to the petitioner’s expunged Montana conviction for simple possession: “[T]here is no rational basis for treating Garberding differently. Had she possessed her marijuana in Michigan, Virginia or Wisconsin, she would not have been subject to deportation.” We explained: “The state legislature in Montana has seen fit to extend the privilege of expungement to persons who are convicted of drug offenses more serious than Garberding’s simple first time possession. It is this fortuitous circumstance, not Garberding’s conduct, which the INS used to distinguish her for deportation.” Id. at 1191. The next year, the BIA accepted our persuasive reasoning and adopted our approach. In re Manrique, 21 I. & N. Dec. 58 (B.I.A.1995).
In 1996, however, Congress enacted a new definition of the term “conviction” for immigration purposes:
The term “conviction” means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien’s liberty to be imposed.
8 U.S.C. § 1101(a)(48)(A). Before any of our sister circuits had interpreted the effect of this new definition with respect to state-court expungements of drug possession convictions, we decided Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir.2000). We framed the question as whether the new definition impliedly repealed the FFOA, and we held that it had not. Id. at 743-19. Because there had been no implied repeal, we held that we remained bound by Garberding’s holding that, “as a matter of constitutional equal protection, ... the benefits of the Act [must] be extended to aliens whose offenses are expunged under state rehabilitative laws, provided that they would have been eligible for relief under the Act had their offenses been prosecuted as federal crimes.” Lujan-Armendariz, 222 F.3d at 749. In a footnote, we rejected the government’s argument that there was a rational basis for treating aliens subject to an expunged state conviction differently than aliens subject to an expunged federal conviction. See id. at 743 n. 24 (“Most important, INS counsel offered no reason, and we cannot conceive of any, why Congress would have wanted aliens found guilty of federal drug crimes to be treated more leniently than aliens found guilty of state drug crimes.”).
Since then, not only has the BIA rejected our analysis, but so has every sister circuit — seven in total—to have addressed the issue. In re Salazar-Regino, 23 I. & N. Dec. 223, 235 (B.I.A.2002) (en banc); Danso v. Gonzales, 489 F.3d 709, 716 (5th Cir.2007); Ramos v. Gonzales, 414 F.3d 800, 805-06 (7th Cir.2005); Resendiz-Alcaraz v. U.S. Attorney Gen., 383 F.3d 1262, 1271-72 (11th Cir.2004); Elkins v. Comfort, 392 F.3d 1159, 1163-64 (10th Cir.2004); Acosta v. Ashcroft, 341 F.3d 218, 224-27 (3d Cir.2003); Vasqusz-Velezmoro v. INS, 281 F.3d 693, 697-98 (8th Cir.2002); Herrerar-Inirio v. INS, 208 F.3d 299, 304-09 (1st Cir.2000). The BIA held:
After considering the analysis set forth in Lujan-Armendariz ..., we decline to apply the ruling in that decision to cases arising outside of the jurisdiction of the Ninth Circuit. We therefore *1107 conclude that, except in the Ninth Circuit, a first-time simple drug possession offense expunged under a state rehabilitative statute is a conviction under [the immigration laws].
In re Salazar-Regino, 23 I. & N. Dec. at 235.
It is easy to understand why the BIA and our sister circuits have disagreed with our view. The issue is whether there is any rational basis to distinguish between aliens subject to a state expungement and aliens subject to a federal expungement. A very relaxed form of rational basis review applies to this inquiry: “[F]ederal classifications based on alienage are subject to relaxed scrutiny. Federal classifications distinguishing among groups of aliens thus are valid unless wholly irrational.” Garberding, 30 F.3d at 1190 (citation and internal quotation marks omitted); see also Abebe v. Mukasey, 554 F.3d 1203, 1206 (9th Cir.2009) (en banc) (per curiam) (“Congress has particularly broad and sweeping powers when it comes to immigration, and is therefore entitled to an additional measure of deference when it legislates as to admission, exclusion, removal, naturalization or other matters pertaining to aliens.”), petition for cert. filed, 78 U.S.L.W. 3322,—U.S.-,—S.Ct. -,—L.Ed.2d-(Nov. 16, 2009).
Our sister circuits have held that this relaxed standard easily is met here. The Third Circuit put it well:
Familiar with the operation of the federal criminal justice system, Congress could have thought that aliens whose federal charges are dismissed under the FFOA are unlikely to present a substantial threat of committing subsequent serious crimes. By contrast, Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA. Congress could have worried that state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advantage of those state schemes to escape what is considered a conviction under state law. Particularly in view of Congress’s power in immigration matters, it seems plain that rational-basis review is satisfied here.
Acosta, 341 F.3d at 227.
I would offer another rational basis. Not all states permit expungement. A person convicted in such a state would be ineligible for relief under the immigration laws, whereas a person convicted in a different state would be eligible. Congress reasonably could have concluded that, in the strong interest of uniformity, it would not recognize any state expungements rather than adopt a piecemeal approach.
When we decided Lujan-Armendariz, we did not have the benefit of our sister circuits’ contrary opinions or the BIA’s contrary opinion. See Chen v. Mukasey, 524 F.3d 1028, 1033 (9th Cir.2008) (“National uniformity in the immigration context also counsels deference where, as here, a failure to defer would cause a split of authority among the circuits.”). Importantly, in my view, we also did not have the benefit of the BIA’s decision to deny recognition of state expungements under all state expungement statutes. Our holding in Garberding — that it is irrational to recognize some states’ expungements but not others’ — is inapposite in light of the BIA’s current interpretation.
In summary, were we writing on a blank slate, or were we to reconsider our rule en banc, I would join our sister circuits’ unanimous recognition that Congress reasonably distinguished between aliens subject to a state expungement and aliens subject to a federal expungement.